[Cite as *State v. Humphrey*, 2010-Ohio-5950.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                                   :
                                                 :
        Plaintiff-Appellee,                      :      Case No: 10CA3150
                                                 :
    v.                                           :
                                                 :      DECISION AND
JEFFREY HUMPHREY,                                :      JUDGMENT ENTRY
                                                 :
        Defendant-Appellant.                     :
                                                 :      File-stamped date:  11-29-10

APPEARANCES:

Eric W. Brehm, Columbus, Ohio, for Appellant.

Michael Ater, Ross County Prosecuting Attorney, and Richard W. Clagg, Ross County
Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

Kline, J.:

        {¶1}    Jeffrey Humphrey appeals his convictions for breaking and entering,

possession of criminal tools, and tampering with evidence.  Humphrey contends that the

trial court erred by failing to suppress a statement he gave to the police.  Because we

find that competent and credible evidence supports the trial court's determination that

Humphrey was sufficiently sober to waive his rights, and because we find under the

totality-of-the-circumstances that the trial court did not err in determining that

Humphrey's voluntarily gave his statement, we disagree.

        {¶2}    Humphrey next contends that the trial court erred by failing to merge his

convictions for breaking and entering and possession of criminal tools as allied offenses

of similar import.  Because the Supreme Court of Ohio has previously rejected

Humphrey's argument, we disagree.  Accordingly, we affirm the judgment of the trial court.

I.

{¶3}    On July 13, 2009, officers from the Ross County Sheriff's Office responded to an alarm activation (the record does not describe the building broken into).  As Corporal Sam Johnson arrived at the scene, he observed a vehicle depart (again there does not appear to be a description of the vehicle in the record).  Johnson, presumably using his radio, notified the other responding officers of the vehicle.  Deputy Matt Kelly was also en route to the scene.  He observed the vehicle headed away from the scene, and, in response to Johnson's notification, he turned his vehicle around to follow.

{¶4}    Kelly followed the vehicle for a short distance.  He observed the driver commit several traffic infractions.  Kelly then initiated a traffic stop based on those infractions.  The driver of the vehicle, Humphrey, admitted that he was driving on a suspended license.  A passenger in the vehicle, Landon Craft, refused to speak to the police.  Kelly also smelled the odor of alcohol both upon Humphrey and the vehicle.  The record is unclear as to whether Kelly conducted any field sobriety tests on Humphrey.  Kelly did later testify that Humphrey did not appear impaired or intoxicated.

{¶5}    Johnson requested that Kelly transport Humphrey along with his passenger back to the scene of the break-in.  Once there, Johnson gave Humphrey warnings pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, and then began to question Humphrey.  But shortly after giving the warnings, the owner of the building or the owner's agent arrived on the scene.  The record does not establish who the owner

or owner's agent was, and Johnson merely refers to him as a "key holder". Johnson then had Kelly transport Humphrey to the police station while Johnson conferred with the owner or owner's agent.

{¶6} Humphrey was placed in one of the interrogation rooms of the police station. When Johnson arrived, he provided Humphrey with the *Miranda* warnings again. Humphrey waived his *Miranda* rights, and Humphrey gave the statement incriminating himself in the break-in. Johnson later testified that he could smell no alcohol on Humphrey, that Humphrey was not slurring his speech, and that Humphrey appeared alert and capable of understanding the proceedings. As an inducement, Johnson promised Humphrey that, regardless of what Humphrey said, Johnson would not file a complaint against him. But Johnson also specifically stated that he had no control over what the prosecutor's office would do.

{¶7} The Ross County Grand Jury returned a three-count indictment against Humphrey for complicity to breaking and entering, possession of criminal tools, and tampering with evidence.

{¶8} Later, Humphrey filed a motion to suppress the statement that Johnson had obtained during his interview. Humphrey argued that he was too intoxicated to knowingly waive his *Miranda* rights. In support of this motion, Humphrey produced Stephanie Yoakem as a witness. Yoakem testified that she picked up Humphrey from the Sheriff's Department and that Humphrey was visibly intoxicated, incoherent, and unsteady on his feet.

{¶9} Based on the testimony of Johnson and Kelly, the trial court overruled Humphrey's motion. Humphrey then pleaded no contest to the three counts in the

indictment.  The court found Humphrey guilty of all three counts.  After a sentencing hearing, the trial court sentenced Humphrey to 12 months in prison for both complicity to breaking and entering and possession of criminal tools.  The trial court also sentenced Humphrey to five years in prison for his conviction of tampering with evidence.  The trial court determined that all sentences should be served concurrently.

{¶10}    Humphrey now appeals and assigns the following errors for our review: I. "THE TRIAL COURT DID ERR BY DENYING THE MOTION TO SUPPRESS APPELLANT'S STATEMENT.  (T.h., p. 95)[.]"  And, II. "THE TRIAL COURT DID ERR BY FAILING TO MERGE ALLIED OFFENSES OF SIMILAR IMPORT.  (T.p., p. 22)[.]"

II.

{¶11}    Humphrey claims in his first assignment of error that the trial court should have granted his motion to suppress.  "'[A]ppellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact.'"  *State v. Featherstone*, 150 Ohio App.3d 24, 2002-Ohio-6028, at ¶10, quoting *State v. Vest*, Ross App. No. 00CA2576, 2001-Ohio-2394 (alteration sic).  "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact."  *State v. Mills* (1992), 62 Ohio St.3d 357, 366 (citation omitted).  Consequently, in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594.  However, an appellate court determines as a matter of law, without deferring to the trial court's conclusions, whether these facts meet the applicable legal standard.  *State v. Klein* (1991), 73 Ohio App.3d 486, 488.

**{¶12}** Waiver of the Fifth Amendment right not to incriminate oneself must be made "voluntarily, knowingly and intelligently." *Miranda* at 444. Absent evidence that coercive police conduct overcame a defendant's will and critically impaired his capacity for self-determination, we presume that a defendant's decision to waive his Fifth Amendment privilege was voluntary. *State v. Dailey* (1990), 53 Ohio St.3d 88, 91-92. To determine whether a waiver was voluntary, the court must consider "the totality of the circumstances" and look specifically at the defendant's "age, mentality, and prior criminal experience * * *; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards* (1976), 49 Ohio St.2d 31, paragraph two of the syllabus, overruled on other grounds by *Edwards v. Ohio* (1978), 438 U.S. 911. Evidence that the defendant signed a written waiver of his rights is strong proof that the waiver is valid. *State v. Dennis*, 79 Ohio St.3d 421, 425, 1997-Ohio-372.

**{¶13}** Humphrey contends that his waiver was ineffective because it was "clear that [Humphrey] had consumed enough alcohol to impair his ability to reason." Humphrey's Brief at 9. The trial court concluded that whatever alcohol Humphrey consumed was insufficient to render him too intoxicated to waive his *Miranda* rights.

**{¶14}** We now consider the trial court's finding that "whatever [Humphrey] had consumed did not make him unable to voluntarily waive his Miranda rights or understand those rights, and properly waive them." We review the record to see if the trial court's conclusion is supported by competent and credible evidence. In the present case, the State produced two witnesses who testified that Humphrey did not appear impaired or intoxicated. One of those witnesses testified that he could not even smell

any alcohol in Humphrey's presence.  Humphrey waived his rights, and, based on the form used by the Ross County Sheriff's Office, he placed an initial next to each individual right he was waiving.  Furthermore, Humphrey personally wrote out his statement.  Given these facts, we find competent, credible evidence supports the trial court's determination that Humphrey was not too intoxicated to waive his rights.  See *State v. VanHoose*, Pike App. No. 07CA765, 2008-Ohio-1122, at ¶21 (finding sufficient evidence based on a signed waiver and the testimony of witnesses that the defendant did not appear to be intoxicated other than a stale odor of an alcoholic beverage).

**{¶15}**    We also note that it is questionable whether a showing of intoxication without any showing of coercion on the part of the government is sufficient to lead to the exclusion of the evidence.  *United States v. Newman* (C.A.6, 1989), 889 F.2d 88, 94 ("Evidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary.") (citations omitted); *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, at ¶34 ("A defendant's mental condition may be a 'significant factor in the 'voluntariness' calculus.  But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'"), quoting *Colorado v. Connelly* (1986), 479 U.S. 157, 164.

**{¶16}**    Humphrey next contends that Johnson rendered his waiver involuntary because Johnson "told [Humphrey] that if he cooperated, that [Johnson] would not

charge him, but [Johnson] could not speak for the Prosecutor's Office[.]" Suppression Hearing Transcript at 54-55.

**{¶17}** "Where an accused's decision to speak was motivated by police officers' statements constituting 'direct or indirect promises' of leniency or benefit and other representations regarding the possibility of probation which were misstatements of the law, his incriminating statements, not being freely self-determined, were improperly induced, involuntary and inadmissible as a matter of law." *State v. Arrington* (1984), 14 Ohio App.3d 111, paragraph two of the syllabus. But "[u]nder the 'totality of circumstances' standard, the presence of promises does not as a matter of law, render a confession involuntary." *Edwards*, Ohio St.2d at 41.

**{¶18}** "To support a determination that a confession was coerced, the evidence must establish that: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear defendant's will; and (3) defendant's will was, in fact, overborne as a result of the coercive police activity." *United States v. Rigsby* (C.A.6, 1991), 943 F.2d 631, 635. Here, we find that Johnson's statement was not objectively coercive.

**{¶19}** As the trial court noted: "the important half of what the deputy testified he said[,] which was, if you give [me a] statement I won't charge you, but I can't speak for the prosecutor's office. That's the important part, and that's the part that serves to make this not a product of any improper inducement. He said I won't charge you, but [I] can't say what the prosecutor's going to do. A correct statement." Suppression Hearing Transcript at 93.

**{¶20}** As noted above in *Edwards*, not all promises are coercive. And this promise was a correct statement, which serves to distinguish it from *Arrington*. See *Arrington* at 115 ("substantially more than simple exhortation, and something less than accurate legal advice, was involved here"). The United States Court of Appeals for the Sixth Circuit has noted that "a promise of lenient treatment or of immediate release may be so attractive as to render a confession involuntary." *United States v. Wrice* (C.A.6, 1992), 954 F.2d 406, 411, citing *Streetman v. Lynaugh* (C.A.5, 1987), 812 F.2d 950, 957. But the Sixth Circuit has also concluded that the rule is "that promises of leniency may be coercive if they are broken or illusory." *United States v. Johnson* (C.A.6, 2003), 351 F.3d 254, 262. Here, the promise was fulfilled, and Johnson did not in fact charge Humphrey. The Sixth Circuit defines an illusory promise, in this context, as "a statement in the form of a promise, but lacking its substance in that it does not actually commit the police to undertake or refrain from any particular course of action." Id. at 262, fn. 1. Here, Johnson's promise both committed the police to a particular course of conduct and also indicated that the prosecutor's office may still charge Humphrey for his conduct. As such, we find that the promise was neither broken nor illusory and, therefore, not coercive.

**{¶21}** Unquestionably, Humphrey drank some amount of alcohol on the night in question. But, under the totality-of-the-circumstances, we find that the amount of Humphrey's alcohol consumption, even when combined with Johnson's statement, did not serve to overbear Humphrey's will.

**{¶22}** Accordingly, we overrule Humphrey's first assignment of error.

III.

**{¶23}**   Humphrey contends in his second assignment of error that the trial court erred by failing to merge allied offenses of similar import.

**{¶24}**   Under Ohio law, "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."  R.C. 2941.25(A).  But "[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."  R.C. 2941.25(B).

**{¶25}**   This statute "codified the judicial doctrine of merger" and "prohibited the 'cumulative punishment of a defendant for the same criminal act where his conduct can be construed to constitute two statutory offenses, when, in substance and effect, only one offense has been committed.'"  *State v. Ware* (1980), 63 Ohio St.2d 84, 86, quoting *State v. Roberts* (1980), 62 Ohio St.2d 170, 172-73.  We must engage in a two step analysis in order to determine whether merger was appropriate.  *State v. Jones*, 78 Ohio St.3d 12, 13, 1997-Ohio-38, citing *State v. Blankenship* (1988), 38 Ohio St.3d 116.

**{¶26}**   "In the first step, the elements of the two crimes are compared.  If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step.  In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses.  If the court finds either that the crimes were committed separately or

that there was a separate animus for each crime, the defendant may be convicted of both offenses." *Blankenship* at 117. The statute "permit[s] cumulative sentencing for the commission of (1) offenses of dissimilar import and (2) offenses of similar import committed separately or with separate animus." *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, at ¶17, citing *State v. Rance*, 85 Ohio St.3d 632, 636, 1999-Ohio-291.

{¶27}    In the present case, Humphrey contends that the trial court should have merged his convictions for breaking and entering and possession of criminal tools. The Supreme Court of Ohio has rejected this argument. See *State v. Talley* (1985), 18 Ohio St.3d 152, syllabus ("[T]he offenses of breaking and entering, grand theft, and possessing criminal tools are not allied offenses of similar import inasmuch as these offenses have elements which do not correspond to such a degree that the commission of one offense will result in the commission of the other. Accordingly, inquiry into whether the crimes were committed with separate animus as to each is unnecessary."). Accordingly, we overrule Humphrey's second assignment of error.

IV.

{¶28}    Having overruled both of Humphrey's assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

Harsha, J., concurring:

**{¶29}**        *State v. Talley* (1985), 18 Ohio St.3d 152 predates the Supreme Court of

Ohio's recent clarification of the proper analysis concerning crimes of similar import by

more than 20 years.  Yet it still passes muster under *State v. Cabrales*, 118 Ohio St.3d.

54, 2008-Ohio-1625, which explains that exact alignment of the elements of the

offenses is not necessary.  When comparing the corresponding elements, all that is

required is a finding that the offenses are so similar that the commission of one will

necessarily result in the commission of the other.  Id. at syllabus 1.

**{¶30}**        Therefore, I agree that *Talley* remains viable and dispositive of the Second

Assignment of Error.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and appellant pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J.:  Concurs in Judgment and Opinion.
Harsha, J.:  Concurs with Concurring Opinion.

For the Court

BY:  _____
       Roger L.  Kline, Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**