[Cite as *State v. Greene*, 2020-Ohio-3684.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 19CA8 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| Matthew Lee Greene, | : | |
| Defendant-Appellant. | : | **RELEASED 7/01/2020** |

APPEARANCES:

Bryan Scott Hicks, Lebanon, Ohio for appellant.

Anneka P. Collins, Highland County Prosecutor, and Adam J. King, Highland County Assistant Prosecutor, Hillsboro, Ohio, for appellee.

Hess, J.

{¶1}   Matthew Lee Greene appeals his rape convictions and contends that the trial court erred by denying his motion to suppress his statements made to an investigating detective. He argues that his statements (1) were not voluntary and (2) that he was subject to a custodial interrogation and his *Miranda* rights were improperly given.  We conclude that the trial court did not err in denying Greene's motion to suppress because the investigators did not use coercive police tactics during the interview. Greene's statements were voluntary. In his motion to suppress, Greene conceded that the interview was non-custodial and did not challenge the *Miranda* warning. Therefore, he has waived those arguments on appeal. We overrule Greene's sole assignment of error and affirm the trial court's judgment.

## I. PROCEDURAL HISTORY

{¶2}   In October 2018, the Highland County Grand Jury indicted Greene on two counts of rape, in violation of R.C. 2907.02(A)(2), first degree felonies, for raping a minor who resided with him.  Prior to trial, Greene filed a motion to suppress statements he made to investigators during an interview on the ground that his statements were not voluntary.  Greene did not contend that the interview was "custodial" in nature, nor did he challenge the *Miranda* warning given after Greene confessed to engaging in sexual activity with the victim.  Rather he explicitly conceded, "at some point during the interview, Defendant was apprised of his miranda [sic] rights. He was not in custody and the interview took place at his residence." The trial court denied the motion, finding that the circumstances surrounding Greene's statements showed that they were made voluntarily. A jury found Greene guilty of both rape counts and the trial court sentenced Greene to a total prison term of 20 years.

## II. ASSIGNMENT OF ERROR

{¶3}   Greene assigns the following error for our review:

1.   The motion to suppress was improperly denied.

### III. LAW AND ANALYSIS

#### A. Motion to Suppress

##### 1. Standard of Review

{¶4}   In general "appellate review of a motion to suppress presents a mixed question of law and fact."  *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and

evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* " 'Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " *Codeluppi* at ¶ 7, quoting *Burnside* at ¶ 8.

### 2. Voluntariness of Confession

{¶5}    If a defendant challenges a confession as involuntary, the state must prove a knowing, intelligent, and voluntary waiver by a preponderance of evidence. *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Colorado v. Connelly*, 479 U.S. 157, 168-169, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Voluntariness of a confession is determined by "the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, *death penalty vacated on other grounds,* 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978).

{¶6}    "The voluntariness of a confession is a question of law subject to de novo review." *State v. McClellan,* 4th Dist. Highland No. 18CA11, 2019-Ohio-4339, ¶ 22, citing *State v. Fouts*, 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, ¶ 35. Unless we find that the police used a coercive tactic, we need not assess the totality of the circumstances. *Id.* citing *State v. Perez,* 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 71. "Evidence of use by the interrogators of an inherently coercive tactic (e.g.

physical abuse, threats, deprivation of food, medical treatment or sleep) will trigger the totality of the circumstances analysis." *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988). "To support a determination that a confession was coerced, the evidence must establish that: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear defendant's will; and (3) defendant's will was, in fact, overborne as a result of the coercive police activity." *State v. Humphrey,* 4th Dist. Ross No. 10CA3150, 2010-Ohio-5950, ¶ 18, *vacated on other grounds*, 128 Ohio St.3d 397, 2011-Ohio-1426, 944 N.E.2d 1172, quoting *United States v. Rigsby*, 943 F.2d 631, 635 (6th Cir.1991); *State v. McClellan,* 4th Dist. Highland No. 18CA11, 2019-Ohio-4339, ¶ 18, *appeal not allowed*, 157 Ohio St.3d 1540, 2020-Ohio-122, 137 N.E.3d 1218, ¶ 18.

{¶7}   In his motion to suppress and at the suppression hearing, Greene argued that his confession was involuntary because he told the police he had mental issues and was taking a prescription drug, and he had not eaten or slept for some time. Additionally, Greene argued that the police used deceptive tactics by misleading him about their resources and the DNA evidence and by telling Greene they were trying to reunite the family.  Greene argues that the investigator used "unrelenting pressures and tactics" that were "almost uniformly psychological tactics * * * deceptive in nature."

{¶8}   At the suppression hearing, Sergeant Chris Bowen of the Highland County Sheriff Department testified that he and Detective Vincent Antinore interviewed Greene. Detective Antinore conducted the interview, and when Greene confessed, Detective Antinore read Greene his *Miranda* rights, which Greene waived and continued to talk. Greene did not appear to be under the influence of any medication or intoxicated, his speech was not slurred, he did not appear tired or unable to concentrate, and he

understood the questions, responded appropriately, and was speaking to them in a conversational style.

{¶9} Detective Antinore testified that the interview occurred across the street from Greene's home, outside in a parking lot. Detective Antinore testified that Greene did not smell of alcohol, was not slurring his speech, did not have red eyes, balance issues, or other signs of intoxication and was answering his questions in an appropriate manner. Detective Antinore did not read Greene his *Miranda* rights initially because Greene was not in custody and he had no intention of taking Greene into custody. However, the interview turned custodial after Greene admitted he had sexual contact with the victim. After Detective Antinore read Greene his *Miranda* rights, Greene continued to talk to him about specific details concerning sexual contact with the victim.

{¶10} The state played the audio recording of the interview. Greene stated that he had been suffering from depression and has "one of the worst mouths, and she should have left 5,000 times ago with my mouth, okay? * * * I'm seeing a psychiatrist and shit over my mouth * * * and I've got a lot of issues in my head that I need to get fixed." Greene admitted he and the victim "had words" the day after the victim turned 18 years old.

{¶11} Detective Antinore explained that he had been investigating Greene and his household and he had some concerns. Detective Antinore then exaggerated the resources of the Highland County Sheriff Department:

> Q. * * * So as investigators in the detective's division, what we do is we take a little bit of information that we get and we use all of our resources, because we've got a ton of resources, our resources are endless really. I mean we've got forensic scientists, forensic psychiatrists, we've got anything that you've seen on TV, double it by a hundred, we've got it okay? Those resources are available to us and we use those every day during the course of our investigations, all right? And we use those resources to kind of weed out

facts from fiction, okay? Because everybody that files a report doesn't always give you factual information.

A. No.

Q. It's unreliable to take somebody's Statement and run with it, okay? So we use those resources to figure out what direction to head next. And I've been using those resources throughout my investigation, okay?

A. Sure.

Detective Antinore testified that he had not used any of those resources in his investigation prior to interviewing Greene, even though he had told Greene otherwise.

{¶12}    Greene initially denied raping or molesting the victim.  However, Detective Antinore explained hypothetically that he could have the victim's bathing suit that has Greene's DNA on it. Greene explained the possible presence of his DNA on the victim's clothing by stating that on some occasions, the victim would be present and watch Greene and his girlfriend having sex.  Greene also admitted that he masturbates "all the time" and his DNA could have been on a pair of the victim's underwear if he wiped his penis off with "whatever is lying on the floor."

{¶13}  Several moments later, Detective Antinore told Greene, "It is my job as a cop to serve you guys and help bring you back together" so he needed Greene to tell him what happened. He also told Greene, "you, of all people, deserve this opportunity to get your family back together."

{¶14}  Greene's girlfriend, who is the victim's mother and has lived with Greene for over 15 years, was present during the interview and interjected a question:

C.H.: Okay. So if something did happen, and he [Greene] does say, 'yes, it happened.', what happens next?

Detective Antinore: Depending on his version of how it happened, if he says, and that was…if he says 'I held her down and raped her with a sock in her mouth.' Right? 'I held her down against her will, I tied her to the bed.'

C.H.: Well, we know he's not gonna say anything like that, so….

Then Greene immediately confessed:

A. Here's one more thing, okay?

Q. All right, I'm listening.

A. Me and [victim] had sex, all right? Yes, she wanted it, too. There.

Q. Okay. When? Tell me how it happened?

A. Since the 8th grade.

{¶15} Greene then confessed that he had sexual intercourse with the victim a "handful of times" since she was in the 8th grade, using a sex toy, his penis, and his finger. Greene also explained that he had anger issues and is bi-polar. Greene then asked if he can leave to pick up his kids from practice. Detective Antinore asked Greene if he would stay there for a minute while he speaks to Sergeant Bowen. Detective Antinore returned to Greene and read him his *Miranda* rights. After Greene is read his *Miranda* rights, he continued talking to Detective Greene, explaining that he also mentally abused the victim. Greene does not ask for an attorney. Detective Antinore testified that after the interview concluded, he took Greene into custody.

{¶16} Detective Antinore stated that he did not have Greene's DNA but that he asked a hypothetical based on possibly having it. Detective Antinore also testified that he did not have any medical evidence that might be protected by HIPPA, though he acknowledged that he told Greene he did.

**{¶17}** The trial court denied the motion to suppress because it determined that Greene did not have a mental illness that would affect his understanding of the questions and the interrogation techniques in which Detective Antinore suggested he had evidence that he did not, in fact, have, was an acceptable and common technique.  The trial court found that based on the totality of the circumstances, Greene's statements were voluntary.

**{¶18}** After carefully reviewing the record, we find, based on the totality of the circumstances, that Greene's statements were voluntary.  Greene was a 35-year old man with a high school education and no prior involvement with law enforcement. At Greene's request, his girlfriend was with him during the entire interview, which lasted approximately 30 minutes. Detective Antinore's tone and treatment of Greene during the entire interview was friendly and considerate. Greene did not sound confused, tired or under duress and responded to Detective Antinore's questions in a conversational style. There is no evidence of physical deprivation, mistreatment, threats, improper inducement, or other coercive police tactics. Although the detective repeatedly told Greene he wanted to hear his version of events and encouraged him to be honest and tell the truth, admonitions to tell the truth are both permissible and non-coercive. *State v. Lewis*, 7th Dist. Mahoning No. 03 MA 36, 2005–Ohio–2699, ¶ 15.

**{¶19}** Greene argues that he had a weakened mental state, but there is nothing in the record that would support a finding that Greene had a weakened will or that his will was easily overcome. Although Greene stated that he had anger issues, was bipolar, and was seeing a psychiatrist, this alone does not establish a weakened will. "[M]ental illness, absent coercive police activity, is not a sufficient basis for excluding [defendant's]

statement." *State v. Hughbanks*, 99 Ohio St.3d 365, 2003-Ohio-4121, 792 N.E.2d 1081, ¶ 69. "The voluntariness of his statement depends on whether the police engaged in coercion and misconduct and not whether [defendant] was mentally ill." *Id.*

**{¶20}** Detective Antinore's statements about helping to bring the family back together were not inherently coercive. Promises of help with "collateral problems," such as family, marital, or psychological difficulties, are not inherently coercive. *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, ¶ 84 (police statements to a bi-polar defendant with anger issues that he could get psychological help were not coercive). Detective Antinore did not offer to bring the victim home in exchange for a confession from Greene, but suggested that Greene might "start the rebuilding process * * * with some honesty right now."

**{¶21}** Detective Antinore's statements that he hypothetically had DNA evidence and that he had medical evidence of sexual contact were not coercive and did not overbear Greene's will.

> The tactic of lying to a suspect about the evidence is not in itself sufficient to render a confession involuntary. *See Frazier v. Cupp*, 394 U.S. 731, 737-739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (false statement that a codefendant had confessed did not make statement involuntary); *Ledbetter v. Edwards*, 35 F.3d 1062, 1066, 1070 (6th Cir.1994) (false statements that defendant's fingerprints had been found at crime scene and that the victim and two witnesses had identified him did not render confession involuntary); *Bays*, 87 Ohio St.3d at 22-23, 716 N.E.2d 1126 (misleading defendant about the strength of the evidence against him did not make confession involuntary). However, the fact that the detectives misrepresented the evidence is a relevant factor in evaluating whether the totality of the circumstances renders the confession involuntary. *Frazier* at 739, 89 S.Ct. 1420.

*State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 196 (though detectives misled Ford by telling him that his DNA was found on shoes and gloves, it was insufficient to render his confession involuntary).

**{¶22}** We have reviewed the transcript of the suppression hearing and the audio recording of Greene's interview with Detective Antinore and find that the trial court properly denied Greene's motion to suppress. No coercive police activity occurred. Greene's statements were made voluntarily.

### 3. Custodial Statements & *Miranda* Rights

**{¶23}** Next Greene argues that his statements should have been excluded because it was a custodial interrogation and his *Miranda* rights were improperly given. Greene did not include these arguments as grounds for his motion to suppress in the trial court and has waived them.

**{¶24}** Crim.R. 12(C)(3) requires Greene to file a motion to suppress statements made in his interview prior to trial and to state the grounds why it should be suppressed. Under Crim.R. 12(H), failure to do so "shall constitute waiver of the defenses or objections." Crim.R. 47 requires the motion to, "state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit."

**{¶25}** In his motion and at the suppression hearing, Greene stated that he was *not* in custody and the statement should be suppressed because it was not voluntarily made. He did not argue that he was in custody or that his *Miranda* rights were improperly given and he has waived those arguments. The Supreme Court of Ohio explained:

By requiring the defendant to state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived.

We therefore hold that in order to require a hearing on a motion to suppress evidence, the defendant must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and court on notice of the issues to be decided.

*State v. Shindler*, 70 Ohio St.3d 54, 58, 1994-Ohio-452, 636 N.E.2d 319 (1994); *State v. Shelby*, 4th Dist. Lawrence No. 15CA20, 2016-Ohio-5721, ¶ 21-22 (where defendant's motion to suppress was based on involuntariness due to intoxication, he could not argue for the first time on appeal that it was involuntary because of "promise leniency;" the argument was waived); *State v. Smith,* 7th Dist. Belmont No. 15BE64, 2017-Ohio-2708, ¶ 53-54 (where defendant's motion to suppress was based on his *Miranda* right waiver, he could not argue for the first time on appeal that it was involuntary due to police inducement; argument waived); *Columbus v. Ridley*, 2015-Ohio-4968, 50 N.E.3d 934, ¶ 28 (10th Dist.) ("It is well-settled law that issues not raised in the trial court may not be raised for the first time on appeal because such issues are deemed waived. This well-settled waiver rule applies to arguments not asserted either in a written motion to suppress or at the suppression hearing.").

## IV. CONCLUSION

**{¶26}** We overrule Greene's assignment of error and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED.  Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the HIGHLAND COUNTY COURT OF COMMON PLEAS, to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court

BY:  _____
                Michael D. Hess, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**