[Cite as *State v. Prather*, 2023-Ohio-784.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210585 |
| | | TRIAL NO. B-1801872 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| GEVON PRATHER, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: March 15, 2023


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann,* Assistant Public Defender, for Defendant-Appellant.

ZAYAS, **Judge.**

**{¶1}** Gevon Prather appeals his convictions and sentences, after a jury trial, for two counts of aggravated robbery, two counts of felonious assault, all with firearm specifications, and three counts of having weapons while under disability. Raising six assignments of error, Prather contends the trial court erred in relying on a three-month-old competency report, prohibiting Prather from calling a witness at trial, admitting hearsay testimony, and imposing multiple sentences on allied offenses. Prather further contends the convictions are based on insufficient evidence and contrary to the manifest weight of the evidence, and that he was deprived of his right to the effective assistance of counsel. For the following reasons, we affirm the trial court's judgment.

## Factual Background

**{¶2}** In April 2018, Gevon Prather was charged with the armed robberies of Elizabeth Colter, Jason Smith, Cameron Hurley, and Joshua Meadows, and the shooting of Smith and Hurley. After a jury trial, Prather was acquitted of all of the charges related to Colter and the shooting and robbery charges related to Hurley.

**{¶3}** Prior to trial, four different lawyers represented Prather, and each requested a competency evaluation. All of the evaluations concluded Prather was competent. The final suggestion of incompetency was filed on April 19, 2021. A competency report was filed on May 12, 2021, that also concluded Prather was competent. Prather requested continuances for the report and waived time on May 12, May 19, and June 15.

**{¶4}** The competency hearing was held on August 23. Prather declined to stipulate to the report, and Dr. Emily Davis, who prepared the competency report, testified. Davis testified that Prather had low to low-average intellectual skills. When

asked about the case and charges, Prather refused to participate and ended his communications with her. Davis testified that she was concerned Prather was exaggerating and malingering. Based on these concerns, she tested Prather, and the results confirmed her concerns. Both of the doctors who previously evaluated Prather also believed he was exaggerating and malingering. Prather did not submit any evidence to refute Davis's competency finding. Prather raised no objection to the scheduling or timing of the competency hearing. The trial court found Prather to be competent, and the case proceeded to trial.

{¶5} Jason Smith testified that he was shot after riding a Metro bus home from work. During Smith's testimony, the state played a Metro bus video. Smith identified himself and Prather riding the bus. After Smith got off of the bus and began walking, Prather approached him from behind and pointed a gun at him. When Smith told him that he only had a bus card, Prather shot him.

{¶6} Joshua Meadows testified that he gave two men a ride at the request of his friend. During the ride, the person in the front seat pointed a gun at him and told him to get out of the car. Meadows got out of the car, and the men drove away. Meadows described the gun as a .22 revolver with a wooden handle that looked like the gun recovered from Prather's home. When shown a photo lineup, Meadows identified a photograph of Prather as the man who had pointed a gun at him. After Meadows identified Prather, he was shown a Facebook photo of Prather and another individual that he had previously identified. Meadows did not identify who showed him the Facebook photo.

{¶7} Officer James Adams, an investigator for the Cincinnati Police Department, testified that he administered a photo lineup to Joshua Meadows.

Meadows identified Prather as the person who pointed a gun at him. Adams also participated in a search of Prather's home. As Adams was searching a sleeping area in the home, he found a shoebox that contained a Heritage Rough Rider revolver.

**{¶8}** Detective Joseph Coombs testified that he was assigned to investigate the string of robberies. Coombs interviewed Cameron Hurley, who suffered a gunshot wound to his leg during a robbery attempt. Although Hurley did not testify at trial, Coombs testified over objection that Cameron Hurley provided a description of Prather as his assailant.

**{¶9}** After Prather was arrested, Coombs interviewed him, and the recorded interview was played at trial. During the interview, Prather admitted that he was the person shown on the Metro recording and admitted that he shot Smith with the revolver found in his closet. Prather told Coombs that he did not shoot Hurley, but he gave the gun to the person who shot him. Prather also admitted that he was a passenger in the back seat of Meadows's car but denied any involvement in the robbery.

**{¶10}** After the state rested, defense counsel attempted to call Randez Collins as a witness. Two days after the jury was impaneled and sworn, Prather filed a discovery response adding Collins as a witness. The state objected to the late witness disclosure and asked that the witness be stricken because Prather was first made aware of the witness in 2018. Defense counsel acknowledged that the state had previously provided the defense with a statement of over 120 pages made by Collins detailing Prather's criminal involvement.

**{¶11}** Counsel also represented that Collins was previously unavailable because he was incarcerated. Collins had recently been released from prison and had

contacted Prather and expressed his willingness to testify on Prather's behalf. Counsel had learned about Collins's availability a few days prior to filing the discovery response.

{¶12} The trial court excluded Collins's testimony due to the late witness disclosure. Collins's whereabouts had been known for the past three-and-a-half years, so the court found that the delay in disclosing Collins as a witness was unwarranted. Prather did not proffer Collins's expected testimony or articulate whether his testimony would differ from his statement.

{¶13} Prather testified on his own behalf. Prather again denied shooting Hurley, but admitted that he had given the gun to the shooter. Prather testified that he was in Meadows's car during the robbery, but denied participating in the robbery.

{¶14} The jury found Prather guilty of two counts of aggravated robbery, two counts of felonious assault, and two counts of having a weapon while under a disability for the offenses against Smith and Meadows. The jury found him not guilty of shooting and robbing Hurley but found him guilty of having a weapon under a disability.

## The Competency Report

{¶15} In his first assignment of error, Prather contends that the trial court committed plain error under R.C. 2945.37 by admitting a competency report when the report was prepared three months prior to the competency hearing. To prevail on a claim of plain error, an accused must show that an error occurred, that the error was plain, and that the error affected the outcome of the trial. *See* Crim.R. 52(B).

{¶16} R.C. 2945.37(B) provides that "the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial" and, "[i]f the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section." Under R.C. 2945.37(C), a court is required to conduct a competency

hearing within ten days after the filing of a competency report unless the hearing is continued for good cause.

**{¶17}** Prather contends that the report was inadmissible because the hearing was not conducted within ten days of the filing of the report as required by R.C. 2945.37(C). However, the statute allows for the hearing to be delayed for good cause. In this case, the hearing was continued beyond the ten-day time period at Prather's request.

**{¶18}** Even if the court erred in continuing the hearing beyond the ten-day time period, Prather cannot establish that the court committed plain error. The record demonstrates that Prather requested four competency evaluations prior to trial. All of the reports concluded that Prather was competent. At the competency hearing, Dr. Emily Davis, the psychologist who prepared the report, concluded that Prather was competent. Davis testified that Prather refused to discuss the case and charges with her during the most recent evaluation and ended his communications with her. Davis suspected that Prather was exaggerating and malingering, and her test results confirmed her concerns. Prather was provided with an opportunity to present evidence and challenge the evaluator's testimony and written report and did not submit any evidence to refute Davis's competency finding. Based on this record, we cannot conclude that Prather established that the outcome of the competency hearing was affected by the delay. We overrule the first assignment of error.

### The Exclusion of the Witness

**{¶19}** Next, Prather claims that the trial court abused its discretion in refusing to allow the defense to call Randez Collins as a defense witness in violation of his Sixth Amendment right to compulsory process.

**{¶20}** Crim.R. 16 controls the discovery process and requires each party to provide the name and address of any witness it intends to call and a continuing duty to disclose witnesses as they are discovered. *See* Crim.R. 16(I); Crim.R. 16(A). A trial court has the discretion to impose sanctions when a party violates the rule. *See* Crim.R. 16(L). "Before imposing the sanction of exclusion, the trial court must find that no lesser sanction would accomplish the purpose of the discovery rules and that the state would be prejudiced if the witnesses were permitted to testify." *City of Lakewood v. Papadelis*, 32 Ohio St.3d 1, 5, 511 N.E.2d 1138 (1987). The factors to be considered when making this inquiry are: (1) the extent of surprise or prejudice to the state; (2) the impact exclusion of the witness would have on the evidence and the outcome; (3) whether the violation was in bad faith; and (4) the effectiveness of less severe sanctions. *Id.* at 10. "It is only when exclusion acts to completely deny defendant his or her constitutional right to present a defense that the sanction is impermissible." *Id.* at 11-12.

**{¶21}** The record indicates that the trial court did not balance the state's interests against Prather's Sixth Amendment right to present a defense. The state was aware of the witness and had provided Collins's police interview to Prather. Prather explained that Collins was previously unavailable because he was incarcerated. But, defense counsel did not proffer Collins's testimony to enable the trial court to determine whether the state would be surprised or prejudiced by the testimony or the impact the exclusion would have on the evidence or outcome.

**{¶22}** We can discern from the record that Collins's statement to the police concerned the charges of aggravated robbery and having weapons while under a disability related to Colter. Notably, the jury acquitted Prather of these two charges.

However, without the proferred testimony, we cannot determine whether the trial court abused its discretion in excluding the testimony of Collins, and we presume the regularity of the proceedings. *See Ellinger v. Ho*, 10th Dist. Franklin No. 08AP-1079, 2010-Ohio-553, ¶ 34.

{¶23} Accordingly, we overrule the second assignment of error.

### Ineffective Assistance of Counsel

{¶24} In the third assignment of error, Prather argues that his trial counsel was ineffective for failing to object to the photo lineup, failing to challenge the administration of the lineup, failing to timely disclose a witness, and failing to move to suppress Prather's interrogation.

{¶25} To establish ineffective assistance of counsel, an accused must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the accused. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The failure to make either showing is fatal to the claim. *Id.* at 697. A defendant is prejudiced by counsel's performance if there is a reasonable probability that the outcome of the proceedings would have been different but for the complained-of conduct. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

{¶26} When a claim of ineffective assistance of counsel is based on counsel's failure to file a motion, the appellant must demonstrate that the motion had a reasonable probability of success. *State v. Rosemond*, 1st Dist. Hamilton No. C-180221, 2022-Ohio-111, ¶ 42. If the motion would not have been successful, then the appellant cannot prevail on the ineffective-assistance-of-counsel claim. *State v. Adkins*, 161 Ohio App.3d 114, 2005-Ohio-2577, 829 N.E.2d 729, ¶ 14 (4th Dist.).

8

### A. Failing to object to the photo-lineup exhibit

**{¶27}** Prather argues that the photo lineup administered to Meadows was not disclosed by the state, and therefore, counsel was ineffective for not seeking to suppress the lineup as a discovery sanction.

**{¶28}** Trial counsel objected to the admission of the photo lineup because counsel had not seen it prior to trial. Counsel acknowledged that she may not have received it from Prather's prior counsel. The state provided defense counsel with the photo array and disclosed that Joshua Meadows identified Prather from a lineup in its discovery response dated June 28, 2018.

**{¶29}** The record reflects that the state provided the lineup in its discovery disclosure, and any objection on that basis would not have been successful.

### B. Failing to challenge the administration of the photo lineup

**{¶30}** Next, Prather contends that trial counsel should have challenged the administration of the photo lineup because showing Meadows a Facebook photo after he identified Prather in a lineup was noncompliant with R.C. 2933.83.

**{¶31}** However, R.C. 2933.83 governs the administration of a police photo lineup. Prather does not allege or argue that the police photo-lineup procedures violated the statute. Moreover, Officer Adams testified about the procedures he used when administering the lineup. Based on his testimony, Adams complied with the statutory procedures. Prather has not demonstrated that challenging the administration of the lineup would have been successful.

### C. Failing to timely disclose a witness

**{¶32}** Prather alleges that his counsel was deficient for failing to timely disclose Collins as a defense witness.

**{¶33}** The record reflects that Prather did not timely inform counsel of his communications with the witness. Moreover, even if counsel erred in timely disclosing the witness, Prather was not prejudiced by the late disclosure because the jury acquitted him of the charges relevant to Collins's testimony.

## D. Failing to move to suppress Prather's interrogation

**{¶34}** Prather contends that his counsel was ineffective for failing to file a motion to suppress his interrogation because it was coercive.

**{¶35}** At the trial, Prather testified that he was at the police station for a few hours and the officer repeatedly asked him the same questions. Prather claims that he eventually got tired and made incriminating statements. Prather acknowledged that the interview lasted 38 minutes, and while at the station, he was allowed to use the restroom and was given food and a drink.

**{¶36}** "To support a determination that a confession was coerced, the evidence must establish that: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear defendant's will; and (3) defendant's will was, in fact, overborne as a result of the coercive police activity." *State v. Humphrey*, 4th Dist. Ross No. 10CA3150, 2010-Ohio-5950, ¶ 18, *vacated on other grounds*, 128 Ohio St.3d 397, 2011-Ohio-1426, 944 N.E.2d 1172, quoting *United States v. Rigsby*, 943 F.2d 631, 635 (6th Cir.1991).

**{¶37}** Prather does not allege or explain how the police conduct was so objectively coercive that his will was overcome. His testimony and the video of the interrogation do not reveal any coercive tactics employed by the police that overcame his will. Accordingly, Prather has not established that a motion to suppress the interrogation had a reasonable probability of success.

**{¶38}** We overrule the third assignment of error.

## Inadmissible Hearsay

**{¶39}** Prather's fourth assignment of error contends that the trial court erred when it allowed the hearsay testimony, over objection, of Coombs recounting Cameron Hurley's description of Prather.

**{¶40}** The state concedes that the testimony was inadmissible under Evid.R. 801(D)(1)(c), which prohibits identification testimony unless the declarant testifies. The erroneous admission of hearsay statements, however, does not necessarily provide grounds for reversal if the error was harmless. *State v. Brown*, 65 Ohio St.3d 483, 485, 605 N.E.2d 46 (1992). Crim.R. 52(A) describes a harmless error as one that "does not affect substantial rights (and therefore) shall be disregarded." Whether the defendant's substantial rights were affected depends on whether the error affected the outcome of the trial. *State v. Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 18.

**{¶41}** Hurley, who did not testify at trial, was the victim of a robbery attempt and suffered a gunshot wound to his leg allegedly committed by Prather. Prather was charged with aggravated robbery, felonious assault and having a weapon while under a disability. However, the jury acquitted Prather of all of the charges concerning Hurley except the having-a-weapon-while-under-a-disability charge. In his statement to police, Prather denied shooting Hurley but admitted to handing the gun to his friend. Prather was ultimately acquitted of the robbery and felonious assault of Hurley. Accordingly, the error did not affect the outcome of the trial. Therefore, we overrule the assignment of error.

## Insufficiency and Manifest Weight

**{¶42}** In his fifth assignment of error, Prather asserts that the convictions are

11

based on insufficient evidence and contrary to the manifest weight of the evidence.

**{¶43}** A challenge to the sufficiency of the evidence presents this court with a question of law that we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The test for determining the sufficiency of the evidence is whether "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

**{¶44}** In reviewing a weight-of-the-evidence claim, we review " 'the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *Id.* at ¶ 63.

## A. Convictions related to Jason Smith

**{¶45}** Prather argues that Smith's identification was unreliable and failed to establish that Prather committed the offenses against him.

**{¶46}** Prather was convicted of having weapons while under a disability and shooting Jason Smith while attempting to rob him. The offenses occurred when Smith disembarked from a Metro bus and was walking home. During Smith's testimony, the

state played a Metro bus video. Smith identified himself and Prather riding the bus. After Smith began walking, Prather approached him from behind, pointed a gun at him, and demanded money. When Smith told him that he only had a bus card, Prather shot him. During the March 30, 2018 interrogation, Prather admitted that he was the person shown on the Metro recording and admitted that he shot Smith. The jury heard all of the testimony and found the identification testimony to be credible.

## B. Conviction related to Cameron Hurley

{¶47} The jury found Prather not guilty of the aggravated robbery and felonious assault of Hurley, and guilty of having a weapon while under a disability. While Prather testified that he did not participate in the robbery or shooting of Hurley, he admitted giving the gun to the person who shot Hurley. Prather's admission to possessing the gun was sufficient to support the conviction.

## C. Convictions related to Joshua Meadows

{¶48} Prather contends that Meadows's identification of him as the robber was unreliable and insufficient to prove identity.

{¶49} Prather was convicted of the aggravated robbery of Meadows and of having a weapon while under a disability. Meadows testified that he gave two men a ride, and the person in the front seat pointed a gun at him and told him to get out of the car. Meadows identified Prather as the man who had pointed a gun at him and testified that the gun found in Prather's home looked like the gun that was pointed at him. Prather admitted to possessing the gun. This evidence was sufficient to establish all of the elements of aggravated robbery and having a weapon while under a disability.

{¶50} Prather challenges the credibility of Meadows's identification of him and the gun, and further argues that the jury should have believed his testimony.

Prather testified that although he was present in the vehicle, he did not rob Meadows. The jury was in the best position to weigh the credibility of Meadows's and Prather's testimony. This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility.

{¶51} The state presented sufficient evidence of each offense for which Prather was convicted, and the jury did not lose its way in finding him guilty. This is not the exceptional case that warrants reversal. We overrule the fifth assignment of error.

## Allied Offenses

{¶52} In his sixth assignment of error, Prather contends the trial court committed plain error under R.C. 2941.25 by imposing multiple sentences on allied offenses of similar import that were not committed separately or with a separate animus. Specifically, Prather argues that his convictions for aggravated robbery and felonious assault of Smith were of the same import and committed with the same animus.

{¶53} An appellate court reviews a trial court's merger determination de novo. *State v. Kennedy*, 1st Dist. Hamilton No. C-120337, 2013-Ohio-4221, ¶ 108, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245. To establish plain error, Prather must show that an error occurred, that the error was obvious, and that there is "a reasonable probability that the error resulted in prejudice." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

{¶54} A defendant may be convicted of multiple offenses if any one of the following is true: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 143 Ohio St.3d

114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus.

**{¶55}** Here, the trial court determined that Prather's pointing the gun at Smith to rob him was a separate offense from Prather shooting him after Smith informed Prather that he had nothing of value to steal. The aggravated robbery was completed when Prather pointed the gun and demanded money. After Smith told him that he had no money, Prather shot him.

**{¶56}** Prather has not established that the trial court committed an obvious error by failing to merge the offenses of aggravated burglary and felonious assault. Accordingly, we overrule the assignment of error.

## Conclusion

**{¶57}** Having overruled all of Prather's assignments of error, we affirm the trial court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry this date.