[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jones*, Slip Opinion No. 2020-Ohio-3051.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3051

THE STATE OF OHIO, APPELLEE, *v.* JONES, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jones*, Slip Opinion No. 2020-Ohio-3051.]**

*Criminal law—A trial court's good-faith error in allowing the state to exercise a peremptory challenge out of sequence is not structural error but rather is trial error and subject to harmless-error review—Court of appeals' judgment affirmed.*

(No. 2019-0187—Submitted February 11, 2020—Decided May 27, 2020.)

CERTIFIED by the Court of Appeals for Hamilton County,

No. C-170358, 2018-Ohio-4754.

_____

KENNEDY, J.

{¶ 1} The First District Court of Appeals has certified a conflict between its decision in this case and a decision from the Tenth District Court of Appeals on the following question of law:

"Where the state is permitted to exercise more than its allotted number of peremptory challenges in a criminal prosecution, does that circumstance constitute structural error requiring automatic reversal of a conviction, or is the defendant-appellant required to demonstrate that prejudice has resulted from the error?"

155 Ohio St.3d 1418, 2019-Ohio-1315, 120 N.E.3d 865, quoting 1st Dist. Hamilton No. C-170358 (Jan. 11, 2019). The answer to both parts of that question is no.

{¶ 2} A structural error is a violation of the basic constitutional guarantees that define the framework of a criminal trial; it is a fundamental *constitutional* defect in the proceeding that is presumptively prejudicial and not susceptible to harmless-error review. *See State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 18. However, the right to exercise peremptory challenges is not guaranteed by either the United States Constitution or the Ohio Constitution but rather is provided by a statute, R.C. 2945.21. Moreover, it is the Rules of Criminal Procedure that regulate the number and manner of exercising peremptory challenges. *See* Crim.R. 24(D) and (E). Accordingly, while a trial court's good-faith misallocation of peremptory strikes is an error, the error does not cause a fundamental constitutional defect within the framework of the trial-court proceedings that should be classified as structural error. Like other trial errors, it is subject to harmless-error review and a reviewing court may disregard the error upon a determination that it did not affect the outcome of the trial-court proceedings.

{¶ 3} In this case, the First District correctly held that the trial court erroneously allowed the state to strike a juror from the panel after the state had waived its final peremptory challenge. But that error is not structural and therefore does not require the automatic reversal of appellant Seante Jones's conviction for complicity to theft. However, when the First District analyzed the error, it

2

incorrectly required Jones to demonstrate that the error affected the outcome of the trial. Under the harmless-error standard of review, the state always bears the burden of demonstrating that the error did not affect the outcome of the trial-court proceedings. Nonetheless, because the record demonstrates that allowing the state to exercise an additional peremptory strike did not affect the outcome of Jones's trial, the appellate court's error is itself harmless.

{¶ 4} Accordingly, we affirm the appellate court's judgment.

**Facts and Procedural History**

{¶ 5} The state charged Jones with theft based on an allegation that he had shoplifted clothing items and a watch valued at $37.97 from a Burlington Coat Factory store in Springdale, Ohio.

{¶ 6} During jury selection, the state chose not to exercise its third and final peremptory strike. Jones then used his final peremptory challenge, causing prospective juror M.W. to be brought into the jury box and seated as the final juror. In his individual voir dire, prospective juror M.W. admitted that his feelings about police officers were "split 50/50," meaning that he believed there were "good cops" and "bad cops." He also said that police-officer-involved shootings in the national news had "gotten [his] attention" and that "it just seemed like, in [his] opinion, things just wasn't adding up." But on further questioning, prospective juror M.W. agreed that he could set those issues aside, listen to the evidence presented in the courtroom, keep an open mind until a verdict was reached, and remain fair and impartial to Jones and to the state. The state did not challenge him for cause. E.R. was then selected as the alternate juror, and both parties agreed that they were satisfied with the jury.

{¶ 7} At a sidebar conference, however, before the jury was empaneled, the assistant prosecuting attorney claimed that the state had been denied an opportunity to use its final peremptory strike on juror M.W. The trial court "reviewed the transcript" and said that it had failed to offer the state the chance to use its last

challenge, and over defense counsel's objection, it excused juror M.W. and seated juror E.R. as the final juror. Jones moved for a mistrial, asserting that Crim.R. 24 did not permit the state to use its third and final peremptory challenge after having waived it and that juror M.W. appeared to be "a potentially friendly juror" for the defense. The trial court denied the request for a mistrial.

{¶ 8} At trial, Steve Seiter, a loss-prevention associate for the Burlington Coat Factory store, testified that on June 29, 2016, he watched from the camera room as Jones and Ricardo Scott entered the store. Seiter testified that Jones appeared to be looking around the store to see if anyone was paying attention to him and that that behavior was concerning because it made Seiter feel like Jones was "doing something that [was] out of the ordinary or * * * suspicious in [a] possible theft act." Seiter observed Jones select clothing from the racks, including a red shirt and a pair of black shorts, and take those items into a fitting room. According to Seiter, Jones left the fitting room, placed several clothing items back on a rack, and then walked out of the store in a hurry, without paying for anything. However, Seiter could not find the red shirt and black shorts. Seiter then checked the fitting room and ascertained that the red shirt and black shorts were missing. Jones got into a tan Hyundai Sonata with Scott. Seiter took down the license-plate number and reported the theft to the Springdale Police Department.

{¶ 9} Officer Joseph Robers testified that he was dispatched to respond to the call, saw Jones and Scott leave the store, and stopped the Sonata as it pulled out of the parking lot. Jones and Scott received pat-down searches, during which merchandise belonging to the store was found. At trial, however, Officer Robers could not remember whether the merchandise belonging to the store was found on Jones or Scott. Subsequently, the car was searched and additional merchandise was found, including a red shirt and black shorts with Burlington Coat Factory stickers on them. Seiter arrived and identified the clothing as items that had been stolen from the store.

{¶ 10} Jones testified in his own defense, explaining that he had arranged a "bootleg trip"—a ride with an unlicensed taxi driver—to Tri-County Mall with Scott, someone Jones had connected with on social media. Burlington Coat Factory was on the way to the mall, and Jones agreed to stop there first, even though he "was not interested in anything at Burlington Coat Factory." He said they walked inside the store and he looked around for about five minutes before returning to the car, where he waited for Scott for another 20 minutes. According to Jones, Scott got back in the car and "start[ed] pulling stuff out of his pants, tucking it away." Jones testified that he told Scott, "I'm not going to jail for you." As Scott drove out of the parking lot, the police pulled the car over and ordered Jones and Scott out of the car. At trial, Jones testified that none of the clothing, which he admitted had been stolen, was found on him.

{¶ 11} The trial court instructed the jury on the offenses of theft and complicity. The jury found Jones not guilty of theft but guilty of complicity. The trial court imposed a jail sentence of 180 days (with 177 days suspended), a $200 fine, court costs, and six months of community control.

{¶ 12} Jones appealed, asserting that the error in allowing the state to exercise a peremptory challenge out of sequence was structural in nature and therefore per se reversible. The court of appeals recognized that the trial court erred in allowing the state to use a peremptory strike that it had already waived, but it held that the error was not a constitutional error and therefore could not amount to a structural error. 2018-Ohio-4754, 124 N.E.3d 439, ¶ 21-23. It then determined that the error was harmless, because Jones had failed to demonstrate that he had been prejudiced by it. *Id*. at ¶ 37. After rejecting other assignments of error not at issue here, the court of appeals affirmed Jones's conviction and sentence. *Id*. at ¶ 52. Subsequently, the First District certified that its decision was in conflict with *State v. Holloway*, in which the Tenth District held that "as a matter of law, the defendant was not required to make a showing of actual prejudice where the state

is granted an 'extra' peremptory challenge," 129 Ohio App.3d 790, 798, 719 N.E.2d 70 (10th Dist.1998).

{¶ 13} We determined that a conflict existed. 155 Ohio St.3d 1418, 2019-Ohio-1315, 120 N.E.3d 865.

**Positions of the Parties**

{¶ 14} Jones maintains that granting the state's request for an "extra" peremptory strike violated his right to a trial by an impartial jury, as guaranteed by Article I, Sections 5 and 10 of the Ohio Constitution and as implemented by Crim.R. 24. He contends that by improperly allowing the peremptory challenge, the trial court "unfairly skewed the trial process in favor of the state," so that the error permeated the whole trial. Jones cites *Lewis v. United States*, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), and decisions from the Fourth, Tenth, and Eleventh District Courts of Appeals for the proposition that a violation of the right to exercise a preemptory strike "is a significant error that traditionally has required automatic reversal." He also argues that regardless of whether the error is constitutional in nature, permitting the state to exercise an out-of-sequence peremptory challenge affected the whole framework of Jones's trial and therefore, because it is impossible to know whether excusing the juror changed the outcome of Jones's trial, the error should not be subject to a harmless-error analysis. A contrary holding, Jones urges, would make the mandatory language of Crim.R. 24 unenforceable.

{¶ 15} The state concedes that the trial court erred in allowing the out-of-sequence peremptory strike but maintains that the error was not structural. It contends that the United States Supreme Court has disavowed cases like *Lewis* because they predated the harmless-error rule. Citing to *State v. Greer*, 39 Ohio St.3d 236, 530 N.E.2d 382 (1988), the state notes that this court has already held that there is no state or federal constitutional right to peremptory challenges. The state further asserts that when a state does provide for the right—as Ohio does—

6

the number of challenges that are allowed is solely a matter of procedure. The state challenges Jones's attempt to bootstrap peremptory challenges to the state and federal constitutional right to an impartial jury, pointing out that not only may biased jurors be removed for cause but that an erroneous excusal of a juror does not compromise a jury's impartiality. The state asks this court to follow the decisions of other state courts of last resort and hold that an error related to peremptory challenges is not a structural error.

{¶ 16} Accordingly, this case presents a single question: whether a trial court's error in allowing the state to exercise a peremptory challenge after having waived it is structural error and therefore per se prejudicial.

**Law and Analysis**

*Plain, Harmless, and Structural Error*

{¶ 17} Ohio's criminal law distinguishes between errors that a defendant objects to at trial and those that he or she fails to raise at trial. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14; Crim.R. 52. When the defendant forfeits the right to assert an error on appeal by failing to bring it to the trial court's attention in the first instance, an appellate court applies plain-error review. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21-22. Under this standard, the defendant bears the burden of "showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. An appellate court has discretion to notice plain error and therefore "is not required to correct it." *Rogers* at ¶ 23.

{¶ 18} In contrast, when a defendant objects to an error, an appellate court applies harmless-error review. *Perry* at ¶ 15. Under that standard, the state "bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *Id*. Whether the defendant's substantial rights were affected depends

on whether the error was prejudicial, i.e., whether it affected the outcome of the trial. *Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, at ¶ 7. An appellate court is required to reverse the conviction when the state is unable to meet its burden. *Perry* at ¶ 15.

{¶ 19} We have recognized that when a defendant is represented by counsel and tried by an impartial fact-finder, there is a strong presumption that all errors—constitutional and nonconstitutional—are subject to harmless-error review. *Id.* at ¶ 17. Nonetheless, this court and the United States Supreme Court have held that certain errors are never harmless. *Weaver v. Massachusetts*, ___ U.S. ___, 137 S.Ct. 1899, 1907-1908, 198 L.Ed.2d 420 (2017); *Perry* at ¶ 17.

{¶ 20} Structural errors are "constitutional defects that ' "defy analysis by 'harmless error' standards" because they "affect[] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself." ' " (Brackets sic.) *Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 17, quoting *Fisher* at ¶ 9, quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). " 'Errors of this type are so intrinsically harmful as to require automatic reversal (i.e., "affect substantial rights") without regard to their effect on the outcome.' " *State v. Hill*, 92 Ohio St.3d 191, 196, 749 N.E.2d 274 (2001), quoting *Neder v. United States*, 527 U.S. 1, 7, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). They are "so fundamental that they obviate the necessity for a reviewing court to do a harmless-error analysis." *Id*. at 199.

{¶ 21} "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Weaver* at ___, 137 S.Ct. at 1907. Structural error has therefore been recognized only in limited circumstances involving fundamental constitutional rights, including the denial of counsel to an indigent defendant, the denial of counsel of choice, the denial of self-representation at trial, the denial of a public trial, and the failure to instruct the jury that a defendant's guilt must be

proved beyond a reasonable doubt. *Id.* at ___, 137 S.Ct. at 1908; *United States v. Davila*, 569 U.S. 597, 611, 133 S.Ct. 2139, 186 L.Ed.2d 139 (2013)

{¶ 22} Therefore, the threshold issue in determining whether an error is structural is whether the error deprives the accused of a constitutional right. *Perry* at ¶ 21; *see also State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 18 ("all structural errors are by nature constitutional errors"); *State v. Esparza*, 74 Ohio St.3d 660, 662, 660 N.E.2d 1194 (1996) ("the trial-error/structural-error distinction is irrelevant unless it is first established that a *constitutional* error has occurred" [emphasis sic]).

*The Right to Peremptory Challenges*

{¶ 23} The Supreme Court of the United States has held that under federal law, the erroneous but good-faith denial of a defendant's peremptory challenge is not a structural error requiring automatic reversal of the defendant's conviction. *Rivera v. Illinois*, 556 U.S. 148, 157-158, 162, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009). The court explained that "there is no freestanding constitutional right to peremptory challenges," *id.* at 157, and that "[b]ecause peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution," *id.* at 158. And it concluded:

> Absent a federal constitutional violation, States retain the prerogative to decide whether such errors deprive a tribunal of its lawful authority and thus require automatic reversal. States are free to decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error per se. Or they may conclude * * * that the improper seating of a competent and unbiased juror does not convert the jury into an ultra vires tribunal; therefore the error could rank as harmless under state law.

*Id*. at 161-162.

{¶ 24} Similarly, this court has held that the Ohio Constitution does not require peremptory challenges to be provided in a criminal trial. *Greer*, 39 Ohio St.3d at 245, 530 N.E.2d 382. Rather, we have explained that while the substantive right to peremptory strikes is provided by R.C. 2945.21, the number of strikes allowed and the time and manner of their exercise is a procedural matter governed by Crim.R. 24. *Greer* at 245-246. In *Greer*, we rejected the argument that a trial court's denial of the lawful number of peremptory challenges to a defendant "is reversible error without any demonstration of prejudice." *Id*. at 244-245. We noted that not only had the accused failed to demonstrate that he was entitled to 24 peremptory strikes in a death-penalty case (double the amount provided by statute and four times that allowed by Crim.R. 24(C)), but because he used only five of the six challenges granted to him, he was also unable to demonstrate "actual prejudice." *Id*. at 245.

{¶ 25} Although *Greer* holds that there is no state constitutional right to peremptory strikes, Jones nonetheless contends that the error in allowing the state to exercise an out-of-sequence peremptory challenge violates his right to an impartial jury as guaranteed by Article I, Sections 5 and 10 of the Ohio Constitution. We acknowledged in *Greer* that "[w]hen utilized in conjunction with the challenge for cause, the peremptory challenge aids in the provision of an impartial jury." *Id*. But the flaws in Jones's argument are that he does not assert that any of the jurors who served on the panel were biased against him and he passed on the opportunity to challenge each one of them for cause. The good-faith error in misallocating peremptory challenges did not deny Jones the right to a panel of impartial, indifferent jurors, and he had no constitutional right to a panel with jurors who appeared friendly or who were skewed in his favor. *See State v. Coley*, 93

Ohio St.3d 253, 258-259, 754 N.E.2d 1129 (2001). The right to an impartial jury is not implicated in these circumstances.

{¶ 26} The trial court did, however, violate a procedural rule dictating the manner in which peremptory challenges are to be made. Crim.R. 24(E) provides that "[p]eremptory challenges shall be exercised alternately, with the first challenge exercised by the state. The failure of a party to exercise a peremptory challenge constitutes a waiver of that challenge, but does not constitute a waiver of any subsequent challenge." For this reason, when the assistant prosecuting attorney failed to exercise the state's third and final peremptory challenge, he waived it, and the trial court erred in permitting him the opportunity to subsequently exercise it against any juror. But that error does not implicate one of those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Instead, a violation of Crim.R. 24(E) is " 'simply * * * an error in the trial process itself,' " *Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, at ¶ 9, quoting *Fulminante*, 499 U.S. at 310, 111 S.Ct. 1246, 113 L.Ed.2d 302. Because a trial court's good-faith mistake in controlling the parties' use of their peremptory strikes does not violate the basic constitutional guarantees setting the framework of a criminal trial as a whole, the error is not structural in nature and therefore is not presumptively prejudicial. Consequently, it is subject to harmless-error review.

*Harmless Error*

{¶ 27} The court of appeals concluded that allowing the state to exercise an out-of-sequence peremptory challenge was harmless error because Jones had failed to demonstrate that he suffered any actual prejudice because of it. However, as we have explained, the state—not Jones—bears the burden on harmless-error review, and it had to show that the error did not affect the outcome of Jones's trial. *Fisher* at ¶ 7; *Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 15.

Accordingly, the court of appeals improperly shifted the burden to Jones to show that the trial court's error affected the outcome of his trial.

{¶ 28} Nonetheless, the record demonstrates that the error was harmless. First, nothing in the colloquy with juror M.W. indicates that he would have voted to acquit Jones or that he would have disregarded his oath to serve impartially. Although juror M.W. did say that his feelings about police officers were "split 50/50" and that there were "good cops" and "bad cops," he also said that media coverage of police-involved shootings had "gotten [his] attention" and that "it just seemed like, in [his] opinion, things just wasn't adding up." But on further questioning, juror M.W. swore that he would set aside those thoughts, listen to the evidence introduced in the case, keep an open mind until a verdict was reached, and remain fair and impartial to Jones and to the state.

{¶ 29} Second, the evidence in this case was overwhelming. Seiter, the loss-prevention associate, testified that he saw Jones enter Burlington Coat Factory, act suspiciously, and take a red shirt and black shorts into a fitting room before leaving in a hurry and without paying for anything. The red shirt and black shorts Jones had selected were not found in the fitting room, and it is undisputed that police officers found those items of clothing—which Jones admitted had just been stolen from the store—minutes later after stopping the Sonata. At the same time, Jones's excuse for being in the store—that he had arranged a ride to the Tri-County Mall with an unlicensed taxi driver who decided to stop and shoplift for 25 minutes at Burlington Coat Factory before taking Jones to his destination—defies credibility.

{¶ 30} For these reasons, it is manifest that the error in excusing juror M.W. did not affect the outcome of the trial.

**Conclusion**

{¶ 31} We are asked to determine whether a trial court's error in allowing the state to exercise a peremptory challenge of a prospective juror in violation of

the Rules of Criminal Procedure rises to structural error. That question is answered by our precedent and caselaw from the United States Supreme Court—only constitutional defects may be structural errors, and misallocating peremptory strikes is a trial error, not a constitutional one. For this reason, we resolve the certified-conflict question by holding that a good-faith error in allowing the state to exercise a peremptory challenge out of sequence is not structural error but rather is trial error and subject to harmless-error review.

{¶ 32} And because we are convinced from the record that the trial court's error did not affect the outcome of Jones's trial and is therefore harmless, we affirm the judgment of the First District Court of Appeals.

So answered.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, and DONNELLY, JJ., concur.

STEWART, J., concurs in part and dissents in part, with an opinion.

_____

**STEWART, J., concurring in part and dissenting in part.**

{¶ 33} I agree that a trial court's error in its application of Crim.R. 24(D) and (E) is not structural in nature and is subject to a harmless-error analysis on review. I also agree that the First District Court of Appeals improperly shifted the burden to appellant, Seante Jones, to show that the trial court's error affected the outcome of his trial. I disagree, however, with this court's decision to conduct a harmless-error analysis in the first instance.

{¶ 34} This court should not conduct a harmless-error analysis of a trial court's actions in the first instance. *See McFadden v. United States*, ___U.S.___, 135 S.Ct. 2298, 2307, 192 L.Ed.2d 260 (2015); *Shelly Materials, Inc. v. Streetsboro Planning & Zoning Comm.*, ___ Ohio St.3d. ___, 2019-Ohio-4499, ___ N.E.3d ___, ¶ 25; *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 29. This is particularly so when, as here, neither party briefed the issue of whether

the court of appeals erred in its application of the harmless-error standard. *State v. Martin*, 156 Ohio St.3d 503, 2019-Ohio-2010, 129 N.E.3d 437, ¶ 18; *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 21.

**{¶ 35}** Accordingly, I would remand this case to the court of appeals so that court may conduct a harmless-error analysis in the first instance.

_____

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Alex Scott Havlin, Assistant Prosecuting Attorney, for appellee.

Raymond T. Faller, Hamilton County Public Defender, and David Hoffmann, Assistant Public Defender, for appellant.

_____