[Cite as *In re E.J.L.*, 2022-Ohio-2846.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| In the Matter of E.J.L., | : | |
| | : | Case No. 21CA20 |
| Adjudicated Delinquent Child. | : | |
| | : | |
| | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| | : | |
| | : | **RELEASED: 08/12/2022** |
| | : | |

APPEARANCES:

Stephen H. Eckstein, Washington Court House, Ohio, for Appellant.

Kelsey R. Riffle, Washington County Assistant Prosecutor, Marietta, Ohio, for Appellee.

Wilkin, J.

{¶1} Appellant, E.J.L., appeals a decision of the Washington County Court of Common Pleas, Juvenile Division, that determined that appellant violated the terms of her community control imposed as a result of her earlier delinquency adjudication for engaging in conduct that would constitute the offense of marijuana possession, a minor misdemeanor if committed by an adult. Consequently, the trial court committed appellant to the Washington County Juvenile Center's temporary custody to complete a rehabilitation program, ordered her to complete a minimum of 100 community-service hours while housed at the Juvenile Center, and entered other dispositional orders not relevant to this appeal.

{¶2} Appellant raises two assignments of error.  In her first assignment of error, appellant asserts that the trial court abused its discretion by ordering her to complete 100 community-service hours for violating the terms of her community control.  In her second assignment of error, appellant contends that the trial court abused its discretion by committing her to the Juvenile Center.

{¶3} After our review of the record and the applicable law, we do not agree with appellant's assertions.  Therefore, we affirm the trial court's judgment.

FACTS AND PROCEDURAL BACKGROUND

{¶4} On April 28, 2021, a complaint was filed that alleged appellant is a delinquent child for having committed an act that would constitute the offense of marijuana possession in violation of R.C 2925.11(A), a minor misdemeanor if committed by an adult.

{¶5} On June 10, 2021, the court held an adjudicatory hearing.  At the hearing, appellant admitted the allegations of the complaint.  The court accepted appellant's admission and adjudicated her a delinquent child.

{¶6} At the dispositional hearing, appellant's probation officer stated that she initially intended to recommend placing appellant in a treatment center.  However, appellant passed a drug screen administered by the probation officer shortly after the dispositional hearing.  Thus, the probation officer decided to recommend that the court place appellant on probation.

{¶7} The court addressed appellant and stated that she should "take advantage of" the probation officer's recommendation.  The court informed

appellant that if the probation officer files additional charges or a probation violation, "then the center is going to be the next step."

{¶8} On June 10, 2021, the court entered a dispositional order that admonished appellant and imposed the following community-control terms: (1) placed appellant on probation; (2) ordered appellant to perform 30 community-service hours within 60 days; and (3) ordered appellant to obtain an assessment at Rigel Recovery Services and to follow any recommended counseling.

{¶9} On September 15, 2021, appellant's probation officer filed a notice of probation violation. The probation officer asserted that appellant (1) refused to tell her family of her whereabouts when they asked her, (2) failed to notify her probation officer when appellant missed school twice in August 2021 and three times in September 2021, (3) broke her curfew nine times between June 11, 2021, and September 13, 2021, (4) has not completed her community-service hours, and (5) failed to complete an intake with Rigel Recovery Services.

{¶10} After an adjudicatory hearing, the trial court found that appellant had violated the terms of her community control. Consequently, the court committed her to the Washington County Juvenile Center's temporary custody in order to complete a rehabilitation program. The court additionally ordered appellant to perform a minimum of 100 hours of community service while at the Juvenile Center. This appeal followed.

ASSIGNMENTS OF ERROR

I.    THE JUVENILE COURT ABUSED ITS DISCRETION WHEN IT IMPOSED 100 HOURS OF COMMUNITY SERVICE AFTER A PROBATION VIOLATION.

II.     THE JUVENILE COURT ABUSED ITS DISCRETION WHEN IT COMMITTED E.J.L. TO THE WASHINGTON COUNTY JUVENILE CENTER AFTER A PROBATION VIOLATION.

ANALYSIS

{¶11} We first point out that appellant has not separately argued her assignments of error. App.R. 16(A)(7) states that an "appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." And App.R. 12(A)(2) provides that a reviewing court may disregard an assignment of error presented for review if the party raising it fails to argue the assignment separately in the brief, as App.R. 16(A) requires. Thus, App.R. 12(A)(2) would permit us to disregard appellant's assignments of error. We prefer, however, to decide cases on their merits rather than on procedural technicalities. *E.g., Barksdale v. Van's Auto Sales, Inc.*, 38 Ohio St.3d 127, 128, 527 N.E.2d 284, 285 (1988) (noting that a "basic tenet of Ohio jurisprudence [is] that cases should be determined on their merits and not on mere procedural technicalities"). Therefore, we will consider appellant's two assignments of error.

{¶12} In her two assignments of error, appellant asserts that the trial court abused its discretion when imposing the disposition for violating her community control and probation. In her first assignment of error, appellant contends that the trial court abused its discretion by ordering her to complete 100 community-service hours. Appellant argues that the juvenile code does not allow a juvenile

court to impose more than 30 community-service hours when the delinquency adjudication involves an act that would be a minor misdemeanor if committed by an adult. She points out that R.C. 2152.19(A)(4)(d) provides that juvenile courts may impose up to 30 community-service hours for an act that would be a minor misdemeanor if committed by an adult. Appellant recognizes that R.C. 2152.19(A)(8) permits a juvenile court to "[m]ake any further disposition that the court finds proper." She claims, however, that R.C. 2152.19(A)(4)(d) is a more specific provision that limits the general discretion that R.C. 2152.19(A)(8) otherwise gives a juvenile court. Appellant alleges that R.C. 2152.19(A)(4)(d) thus prevented the juvenile court from imposing more than 30 community-service hours when her delinquency adjudication involved an act that would be a minor misdemeanor if committed by an adult.

{¶13} In her second assignment of error, appellant asserts that the trial court abused its discretion by committing her to the juvenile center for violating the terms of her probation and for not completing community service. Appellant implies that neither violation was particularly egregious. She thus argues that the trial court should have chosen a less severe sanction due to the nature of the violations.

{¶14} We initially note that, at the dispositional hearing, when the court announced that it would be committing appellant to the Juvenile Center and ordering her to complete 100 community-service hours while housed at the center, appellant did not object to the commitment or argue that the Juvenile

Code prohibited the court from imposing more than 30 community-service hours. Instead, appellant raises these issues for the first time on appeal.

{¶15} It is well-settled that a party may not raise any new issues or legal theories for the first time on appeal. *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975). Thus, a litigant who fails to raise an argument before the trial court forfeits the right to raise that issue on appeal. *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 30 (stating that "an appellant generally may not raise an argument on appeal that the appellant has not raised in the lower courts"); *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 21 (explaining that defendant forfeited his constitutional challenge by failing to raise it during trial court proceedings); *Gibson v. Meadow Gold Dairy*, 88 Ohio St.3d 201, 204, 724, N.E.2d 787 (2000) (concluding that party waived arguments for purposes of appeal when party failed to raise those arguments during trial court proceedings); *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections*, 65 Ohio St.3d 175, 177, 602 N.E.2d 622 (1992) (explaining that an appellant cannot "present * * * new arguments for the first time on appeal"). *Accord State ex rel. Jeffers v. Athens Cty. Commrs.*, 4th Dist. Athens No. 15CA27, 2016-Ohio-8119, fn.3 (stating that "[i]t is well-settled that failure to raise an argument in the trial court results in waiver of the argument for purposes of appeal"); *State v. Anderson*, 4th Dist. Washington No. 15CA28, 2016-Ohio-2704, ¶ 24 (explaining that "arguments not presented in the trial court are deemed to be waived and may not be raised for the first time on appeal").

{¶16} When an adjudicated delinquent child "forfeits the right to assert an error on appeal by failing to bring it to the trial court's attention in the first instance, an appellate court applies plain error review."  *State v. Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 17, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21-22; *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 49 (determining that criminal plain error standard also applies to juvenile delinquency appeals); *State v. Perry*, 4th Dist. Pike No. 16CA863, 2017-Ohio-69, ¶ 14 (failure to object during trial court proceedings forfeits sentencing issues absent plain error).  Under the plain error standard of review, an appellant must demonstrate each of the following: (1) an error occurred; (2) the error was " 'an "obvious" defect in the trial proceedings' "; and (3) the error affected the appellant's substantial rights, *i.e.*, a reasonable probability exists that the error affected the outcome of the trial court proceedings.  *State v. Kirkland*, 160 Ohio St.3d 389, 2020-Ohio-4079, 157 N.E.3d 716, ¶ 71 and ¶ 72, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002) (stating that a "plain" error is an "obvious" error); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22 (concluding that error affects substantial rights when reasonable probability exists that error affected the outcome of the trial court proceedings); *see State v. LaRosa*, 165 Ohio St.3d 346, 2021-Ohio-4060, 179 N.E.3d 89, ¶ 40 (noting that appellant bears burden to demonstrate plain error).

{¶17} Even when an appellant establishes all of the elements necessary to demonstrate plain error, appellate courts are not required to correct the

error.  *Rogers* at ¶ 23.  Instead, appellate courts have discretion when deciding whether to correct plain error.  *Jones at* ¶ 17.  The Ohio Supreme Court has "admonished [appellate] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' "  *Barnes*, 94 Ohio St.3d at 27, quoting *State v. Long* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶18} In the case before us, we do not believe that appellant has shown that the circumstances require us to correct a plain error.  Appellant has not shown that the trial court obviously erred when it committed her to the Juvenile Center and ordered her to complete 100 community-service hours while housed at the Juvenile Center.

{¶19} Juvenile courts have broad discretion to craft dispositions in order to ensure that a delinquent child is rehabilitated.  *In re D.S.*, 148 Ohio St.3d 390, 2016-Ohio-7369, 71 N.E.3d 223, ¶ 20 ("A judge enjoys a great deal of discretion in sentencing, particularly a juvenile court judge in fashioning a rehabilitative disposition."); *In re Caldwell*, 76 Ohio St.3d 156, 159, 666 N.E.2d 1367 (1996) (noting that predecessor statute to R.C. 2152.19(A)(8) gave juvenile court "discretion to take 'any' steps * * * necessary to fully and completely implement the rehabilitative disposition of a juvenile").  Thus, reviewing courts ordinarily will not disturb a trial court's disposition order absent an abuse of discretion.  *In re H.V.,* 138 Ohio St.3d 408, 2014–Ohio–812, 7 N.E.3d 1173, ¶ 8, citing *In re D.S.,* 111 Ohio St.3d 361, 2006–Ohio–5851, 856 N.E.2d 921; *In re B.C.,* 4th Dist. Lawrence No. 06CA43, 2007–Ohio–6477, ¶ 11.  "The term 'abuse of discretion'

implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *H.V.* at ¶ 8, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *see Vaught v. Cleveland Clinic Found.,* 98 Ohio St.3d 485, 2003–Ohio–2181, 787 N.E.2d 631, ¶ 13, quoting *Nakoff v. Fairview Gen. Hosp.,* 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996). Furthermore, when reviewing for an abuse of discretion, an appellate court must not substitute its judgment for that of the trial court. *E.g., State v. Darmond,* 135 Ohio St.3d 343, 2013–Ohio–966, 986 N.E.2d 971, ¶ 34; *State ex rel. Duncan v. Chippewa Twp. Trustees,* 73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (1995); *In re Jane Doe 1,* 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991); *Blakemore.* Indeed, we afford substantial deference to the juvenile court, which "has the opportunity to see and hear the delinquent child, to assess the consequences of the child's delinquent behavior, and to evaluate all the circumstances involved." *In re Caldwell,* 76 Ohio St.3d 156, 160–161, 666 N.E.2d 1367 (1996); *accord Darmond* at ¶ 34 (recognizing that abuse-of-discretion standard is deferential).

{¶20} Although juvenile courts possess broad discretion when choosing among disposition alternatives, courts must remain mindful of the overriding purposes of juvenile dispositions. "The protections and rehabilitative aims of the juvenile process must remain paramount; we must recognize that juvenile offenders are less culpable and more amenable to reform than adult offenders." *In re C.P.,* 131 Ohio St.3d 513, 2012–Ohio–1446, 967 N.E.2d 729, ¶ 84. " 'The principle underlying [the juvenile justice] system [is] to combine flexible decision-making with individualized intervention to treat and rehabilitate offenders rather

than to punish offenses.' " *In re Anderson,* 92 Ohio St.3d 63, 65, 748 N.E.2d 67 (2001), quoting Rossum, Holding Juveniles Accountable: Reforming America's 'Juvenile Injustice System' (1995), 22 Pepperdine L.Rev. 907, 912.

{¶21} Accordingly, R.C. 2152.01(B) requires delinquency dispositions to "be reasonably calculated to achieve" certain statutorily defined "overriding purposes." R.C. 2152.01(A) defines the "overriding purposes" of delinquency dispositions as follows: (1) to provide for the delinquent child's care, protection, and mental and physical development; (2) to protect the public interest and safety, (3) to hold the delinquent child accountable, (4) to restore the victim, and (5) to rehabilitate the delinquent child. *H.V.* at ¶ 9, citing R.C. 2152.01(A). "The statute further states that these purposes are to be achieved 'by a system of graduated sanctions and services.' R.C. 2152.01(A)." *Id.* Additionally, R.C. 2152.01(B) requires dispositions to be "commensurate with and not demeaning to the seriousness of the delinquent child's * * * conduct and its impact on the victim, and consistent with dispositions for similar acts committed by similar delinquent children * * * *." Hence, a juvenile court that is exercising its discretion to impose a delinquency disposition must consider the foregoing principles. *D.S.* at ¶ 6.

{¶22} R.C. 2152.19(A) gives juvenile courts broad authority to impose "any" of the dispositional orders listed in the statute, "in addition to any other disposition authorized or required." As relevant in the case at bar, R.C. 2152.19(A)(2) permits a juvenile court to commit a delinquent child "to the temporary custody of any school, camp, institution, or other facility operated for

the care of delinquent children."  Additionally, R.C. 2152.19(A)(4) allows a

juvenile court to "[p]lace the child on community control under any sanctions,

services, and conditions that the court prescribes."  The statute then contains a

non-exhaustive list of some of the community control sanctions, services, and

conditions that the court may prescribe.  *See id.* (stating that "community control

includes, but is not limited to, the following sanctions and conditions").  Some of

those sanctions, services, and conditions enumerated in the statute include the

following:

> (a) A period of basic probation supervision in which the child is required to maintain contact with a person appointed to supervise the child in accordance with sanctions imposed by the court;
> (b) A period of intensive probation supervision in which the child is required to maintain frequent contact with a person appointed by the court to supervise the child while the child is seeking or maintaining employment and participating in training, education, and treatment programs as the order of disposition;
> (c) A period of day reporting in which the child is required each day to report to and leave a center or another approved reporting location at specified times in order to participate in work, education or training, treatment, and other approved programs at the center or outside the center;
> (d) A period of community service of up to five hundred hours for an act that would be a felony or a misdemeanor of the first degree if committed by an adult, up to two hundred hours for an act that would be a misdemeanor of the second, third, or fourth degree if committed by an adult, or up to thirty hours for an act that would be a minor misdemeanor if committed by an adult;
> \* \* \* \*
> (g) A requirement of alcohol or drug assessment or counseling, or a period in an alcohol or drug treatment program with a level of security for the child as determined necessary by the court;
> (h) A period in which the court orders the child to observe a curfew that may involve daytime or evening hours;
> \* \* \* \*

R.C. 2152.19(A)(4).

**{¶23}** Furthermore, R.C. 2152.19(A)(8) states that a juvenile court may "[m]ake any further disposition that the court finds proper, except that the child shall not be placed in a state correctional institution, a county, multicounty, or municipal jail or workhouse, or another place in which an adult convicted of a crime, under arrest, or charged with a crime is held."

**{¶24}** In the case before us, the juvenile court first adjudicated appellant for committing an act, marijuana possession, that would be a minor misdemeanor if committed by an adult.  For the initial disposition, the court admonished appellant and imposed the following community-control terms and conditions: (1) placed appellant on probation subject to the supervision and control of the Washington County Juvenile Probation Department until further court order; (2) directed appellant to complete 30 community-service hours within 60 days; and (3) ordered appellant to receive a mental-health and drug-and-alcohol assessment to determine whether counseling is needed and to attend any recommended counseling until the court or the counselor terminates it.

**{¶25}** Appellant's probation officer later filed a notice of probation violation. The probation officer alleged that appellant had violated eight terms of her probation, including, among others, failing to obey her curfew, to complete her 30 community-service hours, and to attend counseling.  At the adjudicatory hearing, the court stated on the record that it found that appellant failed to obey her curfew and failed to complete 30 community-service hours.

**{¶26}** At the dispositional hearing, the court stated that it believed that appellant still "can benefit from the Juvenile Center, so that when she completes

that program," appellant is completely rehabilitated and never again enters the juvenile or adult criminal justice system. The court thus committed appellant to the Juvenile Center and ordered her to complete 100 community-service hours while housed at the center.

{¶27} After our review, we do not believe that the trial court abused its discretion by committing appellant to the Juvenile Center. The record shows that the court considered all of the circumstances and appellant's overall behavior when determining to commit her to the center. Furthermore, at the initial disposition, the court warned appellant that failing to comply with the terms of her community control, including probation, would result in the court committing her to the Juvenile Center. The court thus consciously deliberated and decided to impose a graduated disposition for appellant's failure to abide by her community-control terms. Appellant's failure to comply with the initial terms that the court imposed resulted in the court choosing a next-level disposition, i.e., committing appellant to the Juvenile Center. Nothing in the record indicates that the court acted unreasonably, arbitrarily, or unconscionably. Therefore, the court did not abuse its discretion by committing appellant to the Juvenile Center.

{¶28} Moreover, we do not agree with appellant that the trial court abused its discretion by requiring appellant to complete 100 community-service hours while at the Juvenile Center. As we indicated above, R.C. 2152.19(A)(8) gives juvenile courts broad discretion to impose "any further disposition that the court finds proper." We do not believe that the trial court acted unreasonably, unconscionably, or arbitrarily by choosing to require appellant to complete 100

community-service hours while at the Juvenile Center.  Instead, the trial court could have rationally decided that requiring appellant to complete 100 community-service hours had the best chance of fully rehabilitating her so that she never again would appear in juvenile or adult criminal court.

{¶29} Moreover, we do not agree with appellant that the court's decision to impose 100 community-service hours contravenes the language of the statute. We again point out that appellant did not raise this particular argument during the trial court proceedings and, therefore, is limited to arguing plain error on appeal. As we explain below, we do not believe that the trial court plainly erred by imposing 100 community-service hours.

{¶30} Ascertaining the meaning of a statute is a question of law that appellate courts review independently and without any deference to a lower court's interpretation.  *State v. Fazenbaker*, 163 Ohio St.3d 405, 2020-Ohio-6731, 170 N.E.3d 828, ¶ 8, citing *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9.  The fundamental principle that courts apply when determining the meaning of a statute is to give effect to the General Assembly's intent.  *Id.*, citing *Henry v. Cent. Natl. Bank*, 16 Ohio St.2d 16, 242 N.E.2d 342 (1968), paragraph two of the syllabus.  We observe, however, that " '[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact.' "  *State v. Hudson*, ___ Ohio St.3d ___, 2022-Ohio-1435, ___ N.E.3d ___, ¶ 21, quoting *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus.  Accordingly, "[w]hen the statutory language is plain and unambiguous, and conveys a clear and definite

meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12.

{¶31} Statutory interpretation thus begins by reviewing the language used in the statute. *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 23, citing *In re T.R.*, 120 Ohio St.3d 136, 2008-Ohio-5219, 896 N.E.2d 1003, ¶ 8. In reviewing the statute, courts "must give effect to the plain meaning of the words the General Assembly has used, and [courts] may not modify an unambiguous statute by adding or deleting words. If the statutory language is clear and unambiguous, we must apply it as written." *Id.* (citations omitted).

{¶32} Here, we recognize that R.C. 2152.19(A)(4)(d) outlines the number of community-service hours that a court may impose as a community-control condition. The statute indicates that for an act that would be a minor misdemeanor if committed by an adult, the court may impose "up to" 30 community-service hours. However, nothing in the statute specifically indicates that a court lacks discretion to impose more than 30 community-service hours. Indeed, R.C. 2152.19(A)(8) allows a juvenile court to "[m]ake any further disposition that the court finds proper." Had the legislature intended the 30 community-service hours to be a cap for acts that would be a minor misdemeanor if committed by an adult, then the legislature would have used language to indicate that juvenile courts do not have any discretion to impose more than 30 community-service hours for acts that would be a minor misdemeanor if committed by an adult. *Compare* R.C. 2152.19(A)(4)(d) *with*

R.C. 2929.27(D) (expressly stating that a "term of community service imposed for a minor misdemeanor shall not exceed thirty hours").

{¶33} Appellant further argues that R.C. 2152.19(A)(8) is a general provision that conflicts with a more specific provision, R.C. 2152.19(A)(4)(d). She contends that this conflict means that the specific provision prevails.

{¶34} Generally, when a conflict exists between a general statutory provision and a more specific statutory provision, the specific provision controls. *MacDonald v. Cleveland Income Tax Bd. of Rev.*, 151 Ohio St.3d 114, 2017-Ohio-7798, 86 N.E.3d 314, ¶ 27, citing Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012). The basis for this rule is that " ' "[t]he particular provision is established upon a nearer and more exact view of the subject than the general, of which it may be regarded as a correction." ' " *Id.*, quoting Scalia & Garner at 183, quoting Jeremy Bentham, *A Complete Code of Laws*, in 3 *The Works of Jeremy Bentham* 210 (John Bowring Ed.1843). If, however, "two statutes are capable of coexisting," courts must "regard each as effective and, when possible, * * * interpret them in a way that gives effect to both." *O'Neal v. State*, ___ Ohio St.3d ___, 2021-Ohio-3663, ___ N.E.3d ___, ¶ 54.

{¶35} In the case at bar, we do not believe that R.C. 2152.19(A)(4)(d) conflicts with R.C. 2152.19(A)(8). The Ohio Supreme Court consistently has stated that juvenile courts retain broad discretion to craft juvenile dispositions in order to effectively rehabilitate delinquent children. The statutory language does not unambiguously limit the number of community-service hours that juvenile

courts may impose. Instead, the language indicates what a juvenile court "may" choose to do. Furthermore, R.C. 2152.19(A)(8) gives juvenile courts full discretion to impose "any further disposition that the court finds proper." Therefore, we believe that reading these two provisions, contained within the same statute, to coexist is possible. Consequently, each is effective.

**{¶36}** We also point out that the rationale for the rule would not seem to apply when the provisions allegedly in conflict are contained within the same statute and were enacted as part of a comprehensive legislative act aimed at juvenile-justice reform. *See* Juvenile Justice Reform Act, Am.Sub.S.B. No. 179, 148 Ohio Laws, Part IV, 9447. Thus, we disagree with appellant that R.C. 2152.419(A)(4)(d) is a specific provision that prevails over R.C. 2152.19(A)(8).

**{¶37}** Furthermore, appellant has not cited any cases that have suggested that R.C. 2152.19(A)(4)(d) imposes a cap on the number of community-service hours that a juvenile court may levy when entering a disposition for a child adjudicated delinquent for committing an act that would be a minor misdemeanor if committed by an adult, or that R.C. 2152.19(A)(8) conflicts with R.C. 2152.19(A)(4)(d). Consequently, even if we agreed that the trial court erred by imposing 100 community-service hours for violating community control levied as a result of committing an act that would be a minor misdemeanor if committed by an adult, we do not agree that any such error is an obvious or plain error.

**{¶38}** Accordingly, based upon the foregoing reasons, we overrule Appellant's two assignments of error.

CONCLUSION

{¶39} Having overruled appellant's two assignments of error, we affirm the

trial court's judgment.

**JUDGMENT IS AFFIRMED.**

### JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Abele, J.:  Concur in Judgment and Opinion.

For the Court,


BY: _____
　　　Kristy S. Wilkin, Judge

### NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**