[Cite as *State v. Cornwell*, 2026-Ohio-272.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 25CA002 |
| Plaintiff - Appellee | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Holmes County Court of Common Pleas, Case No. 24CR030 |
| JOSLYN CORNWELL | Judgment: Affirmed |
| Defendant – Appellant | Date of Judgment Entry: January 29, 2026 |

**BEFORE:** Andrew J. King, William B. Hoffman, Robert G. Montgomery, Appellate Judges

**APPEARANCES:** Robert K. Hendrix, Assistant Prosecuting Attorney, for Plaintiff-Appellee; Jeffery Kellogg, for Defendant-Appellant

OPINION

*Hoffman, J.*

**{¶1}** Defendant-appellant Joslyn Cornwell appeals the judgment entered by the Holmes County Common Pleas Court convicting her following jury trial of one count of attempted rape of a child under the age of thirteen (R.C. 2923.02/2907.02(A)(1)(b), 2907.02(B)) and sentencing her to a term of five years of incarceration. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On December 7, 2023, the Holmes County Sheriff's Office received a report of a possible incident of sexual abuse. The eleven-year-old victim was a relative of Appellant. Appellant and her boyfriend, Larry Fisher, were the suspected perpetrators. The victim stated she was staying at Appellant's house, and Appellant was sleeping in a camper near the home on the property. While the victim was sleeping, an arm came under the pillow and across her chest. She realized the arm belonged to Fisher, and began to panic. Fisher touched her stomach and her side, and began to pull down the victim's pants. The victim jumped up and ran to the bathroom. After thinking about the incident, the victim ran to the camper where Appellant was staying.

**{¶3}** Police interviewed Fisher. Fisher stated he was having a problem with the fact he only had three sexual partners in his life. He left his relationship with Appellant to pursue other partners, but returned to his relationship with Appellant before any sexual encounters with other partners occurred. Fisher asked Appellant to oversee his experiences with other sexual partners. Fisher told police he and Appellant decided to have the victim watch their toddler, who was very active at the time. While the victim was

staying at the house, the opportunity presented itself for Fisher to have sex with the victim. Fisher told police he believed the victim's account of what occurred between them, but he did not remember the encounter.

{¶4} Appellant initially denied any involvement with the incident. However, Appellant eventually changed her story. Appellant told police Fisher was attracted to young girls, specifically the victim. Fisher told Appellant he would kill himself if he didn't get the chance to sleep with a virgin. Fisher asked Appellant for help, stating the victim could be asleep at the time. Fisher had a bottle of chloroform he wanted to use on the victim, but Appellant did not want to use chloroform on the victim.

{¶5} Appellant told police one day when the victim came to the house to babysit, she mentioned Fisher's proposal, and the victim cried. Appellant told the victim she would not bring it up again. She invited the victim back to the house to babysit on another occasion. While the victim was in the house, Fisher began begging to do something with the victim. He wanted to give the victim melatonin so he could have sex with her while she slept, but Appellant declined. Fisher continued to beg, and Appellant woke up the victim. Appellant told the victim Fisher thought the victim was pretty and he wanted to "adult cuddle" with the victim. State's Exhibit 6. Appellant then went to a camper on the property. The victim later came to the trailer crying, telling Appellant she thought Appellant meant Fisher just wanted to talk to her when Appellant said he wanted to adult cuddle. The victim told Appellant Fisher tried to pull her shorts down.

{¶6} Appellant was indicted by the Holmes County Grand Jury with one count of attempted rape. The case proceeded to a jury trial in the Holmes County Common Pleas Court.

**{¶7}** As voir dire began, it became apparent the trial judge's mother was a potential juror in the case. The trial court addressed the potential jurors:

So that's the general outline, and I'll have a few questions for you, and then counsel will have a few questions for you after we administer the oath, but before we get to that, I also like to take a moment and acknowledge kind of the uniqueness of our community and the fact that I know a great number of you to various degrees, from a little bit to somebody who gave me life and gave me my name. This is so surreal that my mother's in the jury pool today, so it's very strange to make her stand when you come into the room, because that does not happen anywhere else, so – a very weird moment.

**{¶8}** Tr. 5-6.

**{¶9}** Although the trial court did not identify which juror was his mother, the jury chart filed as a part of the record in this case demonstrates Juror No. 3 has the same last name as the trial court. During voir dire, the only question and response recorded concerning Juror No. 3 came after she apparently raised her hand when defense counsel asked if anyone had heard of the presumption of innocence:

MR. CROSS: What does the presumption of innocence mean to you?

JUROR NO. 3: (Unintelligible).

MR. CROSS: Ok.  So based on thoughts and what you have heard. Now, what about as she currently sits here right now?

JUROR NO. 3:  By – by looking at her and (unintelligible).

**{¶10}** Tr. 23.

**{¶11}** The trial judge's mother was selected as a juror.   Toward the end of the first day of trial while discussing whether to recess for the day, the trial judge noted he knew his mother had to get home to care for his father.

**{¶12}** The jury found Appellant guilty.  The trial court convicted Appellant upon the jury's verdict and sentenced her to five years of incarceration.

**{¶13}** It is from the January 17, 2025 judgment of the trial court Appellant prosecutes her appeal, assigning as error:

THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO AN IMPARTIAL JURY AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS WHEN IT FAILED TO EXCUSE THE JUDGE'S MOTHER FROM THE JURY SUA SPONTE FOR CAUSE, DESPITE HER IMPLIED BIAS AND THE APPEARANCE OF IMPROPRIETY, ALTERNATIVELY, TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO CHALLENGE THE JUROR FOR CAUSE OR USE A PEREMPTORY CHALLENGE.

{¶14} Appellant argues the trial court erred in failing to sua sponte excuse his mother from the jury, and further argues the seating of the judge's mother on the jury was structural error.  In the alternative, she argues counsel was ineffective for failing to further pursue the possibility of bias on the part of Juror No.3, and by failing to challenge her for cause or exercise a peremptory challenge to remove her from the jury.  We disagree.

{¶15}  Crim. R. 24(C) provides in pertinent part:

(C) Challenge for cause.   A person called as a juror may be challenged for the following causes:

(10) That the juror is related by consanguinity or affinity within the fifth degree to the person alleged to be injured or attempted to be injured by the offense charged, or to the person on whose complaint the prosecution was instituted; or to the defendant.

(11) That the juror is the person alleged to be injured or attempted to be injured by the offense charged, or the person on whose complaint the prosecution was instituted, or the defendant.

(12) That the juror is the employer or employee, or the spouse, parent, son, or daughter of the employer or employee, or the counselor, agent, or attorney, of any person included in division (B)(11) of this rule.

(14) That the juror is otherwise unsuitable for any other cause to serve as a juror.

{¶16} A trial court may, in the exercise of its discretion, sua sponte dismiss a juror when it determines a juror possesses either enmity or bias toward a party or determines for some other reason a juror is not impartial or is otherwise unsuitable for service. *State v. Midwest Pride IV, Inc.,* 131 Ohio App.3d 1, 20 (12th Dist. 1998). A trial court's ruling "'will not be disturbed on appeal unless it is manifestly arbitrary.'" *Id*.

{¶17} In *State v. Brumley,* 1996 Ohio App. LEXIS 1390 (11th Dist. March 29, 1996), the trial judge's brother-in-law was unsuccessfully challenged for cause by the defendant, and ultimately served as a juror in the case. On appeal, the defendant argued the trial court erred in failing to excuse his brother-in-law for cause. In rejecting the defendant's argument, the appellate court noted Crim. R. 24(C) does not include a provision requiring a close relative of the trial judge to be excused from the jury, nor is there a general rule all relatives of an attorney must be excused from the jury. *Id*. at 50. The court held:

> If a relative of the prosecuting attorney or defense counsel can only be challenged for cause under certain circumstances, it logically follows that a relative of the trial judge can only be excused when his answers during voir dire specifically indicate that he is somehow biased toward either party. This conclusion follows from the fact that, unlike the attorneys in the case, the trial judge is an impartial figure who has no interest in the ultimate outcome of the case. Given this, there is no reason to assume that a relative of the judge is automatically biased toward either party.

**{¶18}** *Id*. at 51.

**{¶19}** In the instant case, nothing in Juror No. 3's answers during voir dire indicated she was biased toward either party. She was not automatically disqualified by virtue of her relationship to the trial judge, as the trial judge is a neutral party with no interest in the outcome of the case. We find the trial court did not err in failing to sua sponte excuse his mother from the jury.

**{¶20}** Appellant next argues the inclusion of the trial judge's mother in the jury was structural error. We disagree.

**{¶21}** A constitutional error is structural when it affects the framework in which the trial is conducted, rather than simply being an error in the trial process itself. *State v. Jones*, 2020-Ohio-3051, ¶ 20. The Supreme Court of Ohio addressed when structural error analysis should be used in *State v. Perry*, 2004-Ohio-297, ¶ 23:

> We emphasize that both this court and the United States Supreme Court have cautioned against applying a structural-error analysis where, as here, the case would be otherwise governed by Crim.R. 52(B) because the defendant did not raise the error in the trial court. See *Hill*, 92 Ohio St.3d at 199, 749 N.E.2d 274; *Johnson*, 520 U.S. at 466, 117 S.Ct. 1544, 137 L.Ed.2d 718. This caution is born of sound policy. For to hold that an error is structural even when the defendant does not bring the error to the attention of the trial court would be to encourage defendants to remain silent at trial only later to raise the error on appeal where the conviction would be automatically reversed. We believe that our holdings should foster rather

than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court-where, in many cases, such errors can be easily corrected.

{¶22} *State v. Jones*, 2018-Ohio-4089, ¶ 12.

{¶23} In the instant case, Appellant could have raised the asserted error in the trial court by challenging the juror for cause, and Appellant could have removed the juror by use of peremptory challenge. We find structural error does not apply in the instant case.

{¶24} Finally, Appellant argues counsel was ineffective for failing to adequately question Juror No. 3 concerning potential bias, for failing to challenge her for cause, and/or for failing to use a peremptory challenge to excuse her.

{¶25} A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136, (1989). In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id*.

{¶26} Appellant has not demonstrated a reasonable probability the result of her trial would have been different had counsel taken steps to remove the judge's mother from the jury. Nothing in the record reflects the judge's mother was biased against

Appellant.  Fisher admitted to police he attempted to engage in sexual activity with the victim, and Appellant admitted to police she attempted to aid Fisher in his endeavor to engage in sexual activity with the victim.  We find Appellant has not demonstrated counsel was ineffective.

{¶27}  The assignment of error is overruled.  The judgment of the Holmes County Common Pleas Court is affirmed.  Costs are assessed to Appellant.

By: Hoffman, J.

King, P.J. and

Montgomery, J. concur